UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NICHOLAS A. LONG,

                  Plaintiff,                        **DECISION AND ORDER**

           v.                              1:18-CV-01144 EAW

COUNTY OF ORLEANS, ORLEANS
COUNTY SHERIFF'S OFFICE, SHERIFF
RANDY BOWER, *in his official capacity*,
and UNDERSHERIFF CHRISTOPHER M.
BOURKE, *in his official capacity*,

                  Defendants.
_____

## <u>INTRODUCTION</u>

       Represented by counsel, plaintiff Nicholas A. Long ("Plaintiff") brings this action

against defendants County of Orleans (the "County"), Orleans County Sheriff's Office

("Sheriff's Office"), Sheriff Randy Bower ("Sheriff Bower"), and Undersheriff

Christopher M. Bourke ("Undersheriff Bourke")[1] (collectively "Defendants"), related to

Plaintiff's arrest on June 20, 2017, at the Sheriff's Office in Albion, New York. (Dkt. 1-1).

Currently pending before the Court is Defendants' motion for summary judgment pursuant

to Federal Rule of Civil Procedure 56.  (Dkt. 18).  For the reasons set forth below,

Defendants' motion is granted.

---

[1]     Sheriff Bower is now retired, and Undersheriff Bourke was elected as Orleans
County Sheriff in 2019.  (Dkt. 18-29 at ¶¶ 1-2).  To avoid confusion, the Court refers to
Sheriff Bower and Undersheriff Bourke consistent with their roles at the time of the
incident underlying Plaintiff's claims.

## BACKGROUND

### I.   Factual Background

Before setting forth the factual background of this matter, the Court must resolve a threshold procedural issue.   As required by Local Rule of Civil Procedure 56(a)(1), Defendants submitted with their motion for summary judgment "a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  L. R. Civ. P. 56(a)(1).  Pursuant to Local Rule 56(a)(2), Plaintiff was required to include with his opposition papers "a response to each numbered paragraph in the moving party's statement, in correspondingly numbered paragraphs and, if necessary, additional paragraphs containing a short and concise statement of additional material facts as to which it is contended there exists a genuine issue to be tried."  L. R. Civ. P. 56(a)(2).  He did not do so.  Instead, he included his own "Statement Pursuant to Rule 56" (Dkt. 25) ("Plaintiff's Statement"), which sets forth his version of the relevant events but fails to respond to Defendants' Statement of Undisputed Material Facts (Dkt. 18-29) ("Defendants' Statement").

Local Rule 56(a)(2) further provides that "[e]ach numbered paragraph in the moving party's statement of material facts may be deemed admitted for purposes of the motion <u>unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement</u>."  L. R. Civ. P. 56(a)(2) (emphasis added).  Although a district court should not deem unopposed facts to be admitted when those facts are unsupported by the record, *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73-74 (2d Cir. 2001), a district court has discretion to deem facts admitted for lack of compliance with its local rules, *see N.Y. State*

- 2 -

*Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005) (it was within district court's discretion to deem the moving party's statement of material facts admitted where the opposing party "offered mostly conclusory denials" and "failed to include any record citations" contrary to the district's local rules); *Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1 (2d Cir. 1998) (because plaintiff failed to respond to defendant's statement of material facts submitted in accordance with local rules, "the material facts contained in his statement are deemed to be admitted as a matter of law"). Here, the Court has accepted as true the facts set forth in Defendants' Statement, to the extent they are (1) supported by the evidence of record and (2) not directly controverted by Plaintiff's Statement and the exhibits submitted in support thereof.  Where a fact is disputed, the Court has noted the same.

Plaintiff is "well-known by law enforcement," including Sheriff Bower and Undersheriff Bourke, "for being aggressive and disruptive." (Dkt. 18-29 at ¶ 18).  Plaintiff would frequently visit the Sheriff's Office and "act aggressively and use profanity towards the deputies"; on one such occasion, Plaintiff attempted to "launch himself through the window" of the Sheriff's Office.  (*Id*. at ¶ 19).  As a result of Plaintiff's aggression towards police, and prior to June 20, 2017, "either Albion Police Department or the New York State Troopers issued an 'officer safety notice' for officers of all police departments in the area to proceed with caution when interacting with Long[.]"  (*Id*. at ¶ 22).

The Sheriff's Office is located inside the Public Safety Building in Albion, New York.  (*Id*. at ¶ 26).  The Public Safety Building houses other Orleans County departments, including the District Attorney's Office and Probation.  (*Id*. at ¶ 27).  On June 20, 2017,

Plaintiff arrived at the Public Safety Building between 9:20 a.m. and 9:40 a.m., which was during normal business hours. (*Id.* at ¶ 28). Plaintiff entered the Sheriff's Office and told Allison Reichard, the civil clerk, that he wanted to speak to Sheriff Bower; Ms. Reichard then informed Sheriff Bower of Plaintiff's request. (*Id.* at ¶¶ 29-30). Plaintiff states that he wanted to "file a complaint against [an] investigator and discuss the matter with Sheriff Bower." (Dkt. 25 at ¶ 7).

Sheriff Bower came out of his office and had a conversation with Plaintiff in the Sheriff's Office waiting room. (Dkt. 18-29 at ¶ 32). In connection with the instant motion for summary judgment, the Court has reviewed surveillance footage of Sheriff Bower's conversation with Plaintiff and the events that followed. The surveillance footage lacks sound, but the Court will summarize what it shows visually. Plaintiff, accompanied by his dog, enters the Sheriff's Office waiting room at approximately 9:42 a.m. on June 20, 2017. Plaintiff has a brief interaction with an unseen individual at the desk and then sits in a chair in the waiting room. At approximately 9:45 a.m., Sheriff Bower, who uses a wheelchair, enters the waiting room and begins interacting with Plaintiff. Plaintiff and Sheriff Bower speak without visible incident until approximately 9:49 a.m., when Plaintiff begins gesturing and Sheriff Bower then moves closer to Plaintiff and points at Plaintiff and then the door. Sheriff Bower then exits into the hallway, gesturing for Plaintiff to follow, but Plaintiff remains seated. Sheriff Bower turns to face Plaintiff, and Plaintiff stands up and walks to the doorway between the hallway and the waiting room. Plaintiff and Sheriff Bower speak to each other in the hallway outside the door, and then move further down the hallway, stopping near what appears to be an exit to the outdoors. At approximately

9:50 a.m., Undersheriff Bourke walks through the waiting room and into the hallway. Undersheriff Bourke walks down the hallway to where Plaintiff and Sheriff Bower are located, followed by Orleans County Sheriff's Deputy Alex Breuilly ("Deputy Breuilly"). Undersheriff Bourke speaks to Plaintiff briefly before grabbing Plaintiff's arms and taking him to the ground. Undersheriff Bourke and Deputy Breuilly place Plaintiff in handcuffs while he is still on the ground, then lift him to his feet. Undersheriff Bourke walks Plaintiff back into the waiting room, with Plaintiff appearing to try to remove himself from Undersheriff Bourke's grasp.

The parties dispute the contents of Plaintiff's conversation with Sheriff Bower. Plaintiff claims that Sheriff Bower became angry at him when Plaintiff stated that he was "handicapped too," because Sheriff Bower incorrectly believed that Plaintiff was making fun of him. (Dkt. 25 at ¶ 10). Plaintiff claims that he and Sheriff Bower then walked down the hall together, with Plaintiff asking what he had done and why he had to leave. (*Id*. at ¶ 14). Plaintiff claims that Undersheriff Bourke then "charged at" Plaintiff and grabbed him, twisted his arms, put his knee in his back, and told him he was under arrest. (*Id*. at ¶ 15). Plaintiff confirmed at his deposition that he became angry and raised his voice at Sheriff Bower when Sheriff Bower asked him to leave, and that he did not immediately comply with Sheriff Bower's direction. (Dkt. 18-29 at ¶¶ 39-41). Plaintiff further admitted that Sheriff Bower ordered him to leave at least three to four times. (*Id*. at ¶ 43).

According to Defendants, Sheriff Bower's direction to Plaintiff to leave the building was precipitated by Plaintiff shouting that "you guys are all fucking corrupt." (*Id*. at ¶ 36). According to Defendants, Plaintiff yelled and shouted at Sheriff Bower as they walked

down the hallway, including telling him that he was "fucking corrupt" and that his deputies were "all criminals," as Sheriff Bower continued telling him to leave.  (*Id.* at ¶¶ 50-51). Defendants maintain that Plaintiff refused to leave, and stopped at the end of the hallway "to continue shouting at Sheriff Bower."  (*Id.* at ¶ 52).

Defendants further maintain that Ms. Reichard overheard Plaintiff yelling at Sheriff Bower and, concerned about Plaintiff's "increasing hostility," asked Deputy Breuilly to assist Sheriff Bower.   (*Id.* at ¶¶ 53-55).   However, Deputy Breuilly was on light-duty at the time due to a back injury, and so Undersheriff Bourke also responded to the request for assistance.  (*Id.* at ¶¶ 56-57).

Undersheriff Bourke claims that as he approached Plaintiff, he told him to leave the building, to which Plaintiff shouted, "I do not have to fucking leave."  (*Id.*  at ¶¶ 60-61). Undersheriff Bourke then claims that he advised Plaintiff that he would be arrested if he continued to cause a disturbance and that when Plaintiff continued yelling and swearing, Undersheriff Bourke attempted to arrest him, but Plaintiff "immediately yanked his hand away."  (*Id.* at ¶¶ 62-65).  According to Undersheriff Bourke, he then "used a wrist-arm technique that is taught at the police academy to gain control of" Plaintiff and then "guided [Plaintiff] gently to the ground in order to safely handcuff him."  (*Id.* at ¶¶ 66-67).

Plaintiff was charged with harassment, resisting arrest, and disorderly conduct.  (*Id.* at ¶ 71).   He was arraigned approximately 45 minutes later and released on his own recognizance.  (*Id.* at ¶ 72).   The arraigning judge issued an order of protection directing Plaintiff to stay away from the Public Safety Building.  (*Id.* at ¶ 73).  The criminal charges

against Plaintiff were ultimately dismissed as a result of a failure to prosecute.  (*Id*. at ¶ 75).

## II.   **Procedural Background**

Plaintiff commenced the instant action in New York State Supreme Court, Orleans County.  (Dkt. 1-1).  The matter was removed to this Court on October 17, 2018.  (Dkt. 1).

Discovery closed on December 12, 2019.  (Dkt. 13).  On August 6, 2020, at the request of the parties, the Court entered a Stipulation and Order discontinuing Plaintiff's state law claims.  (Dkt. 16; Dkt. 17).

Defendants filed the instant motion for summary judgment on August 31, 2020. (Dkt. 18).  Plaintiff filed his opposition on October 15, 2020 (Dkt. 25), and Defendants filed reply papers on November 5, 2020 (Dkt. 28; Dkt. 29).

## <u>DISCUSSION</u>

## I.   **Legal Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the Court finds that no rational jury could find in favor of that party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ."  *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486

(2d Cir. 2014).  "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial."  *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation."  *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)).   Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Brown*, 654 F.3d at 358.  Indeed, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## II.   <u>Defendants are Entitled to Summary Judgment</u>

Defendants seek summary judgment on numerous grounds: (1) the Sheriff's Office is not capable of being sued; (2) there is no basis for finding municipal liability; (3) Plaintiff cannot establish an underlying constitutional violation; and (4) Plaintiff cannot demonstrate that he suffered any injury from his arrest on June 20, 2017.  (*See* Dkt. 18-30). For the reasons set forth below, the Court agrees that the Sheriff's Office is not a viable

defendant in this case and that there is no basis for imposition of liability on the municipality.  Accordingly, the Court grants Defendants' motion for summary judgment.

### A.    The Sheriff's Office is not Amenable to Suit

The Court considers first the Sheriff's Office's argument that it is entitled to summary judgment on all of Plaintiff's claims against it, because it lacks the capacity to sue or be sued.  Plaintiff has not responded to this aspect of Defendants' motion.

"Federal courts apply state law to determine whether an entity has capacity to be sued."  *Andradez v. Orange Cty. Sheriff's Off.*, No. 20-CV-2050 (PMH), 2020 WL 1819881, at *1 (S.D.N.Y. Apr. 10, 2020) (*citing* Fed. R. Civ. P. 17(b)).  "Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality, and therefore, cannot sue or be sued."  *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002).  This includes county sheriff's departments.  *See Andradez*, 2020 WL 1819881, at *1 (dismissing claims against Orange County Sheriff's Office); *Jenkins v. Onondaga Cty. Sheriff's Dep't*, No. 5:12-CV-855 GTS/ATB, 2012 WL 4491134, at *2 (N.D.N.Y. June 28, 2012) ("[U]nder New York law, departments, like the Onondaga County Sheriff's Department, that are merely administrative arms of a municipality, do not have a legal identity separate from the municipality and may not sue or be sued.").  As a result, Plaintiff cannot maintain his claims against the Orleans County Sheriff's Office, and summary judgment is granted as to the same.

B.      <u>There is no Basis for Imposition of Municipal Liability</u>

The Court turns next to Defendants' contention that there is no basis for imposition of municipal liability in this case.  As a threshold matter, the Court notes that Plaintiff has sued Sheriff Bower and Undersheriff Bourke in their official—and not their individual—capacities.  (*See* Dkt. 1-1 at 1, 6 (Plaintiff's summons and complaint repeatedly and unambiguously specifying that Sheriff Bower and Undersheriff Bourke are sued in their official capacities)).  Indeed, Plaintiff does not argue in his opposition to the instant motion that he has asserted individual capacity claims against either Sheriff Bower or Undersheriff Bourke.

"[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity."  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citation omitted).  Accordingly, Plaintiff's official capacity claims against Sheriff Bower and Undersheriff Bourke—the only claims he has asserted against them—are coextensive with his claims against the County.

As to the merits of Plaintiff's claims against the County, because Plaintiff has withdrawn his state law claims, his only remaining claims are for false imprisonment and excessive use of force pursuant to 42 U.S.C. § 1983.  (*See* Dkt. 1-1 at 4-6).  "Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury."  *Connick v. Thompson*, 563 U.S. 51, 60-61 (2011) (quoting *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)).  "Official municipal policy includes the decisions of a government's

lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.*

Here, Defendants have satisfied their burden on summary judgment by pointing out that there is no evidence that the actions of which Plaintiff complains were taken pursuant to an official municipal policy or custom. *See Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) ("A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial. It need only point to an absence of proof on plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'" (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

In opposition, Plaintiff makes two arguments in support of his contention that genuine issues of material fact exist regarding whether the County can be held liable for the claimed violation of his constitutional rights: (1) that the "officer safety notice" issued by either the Albion Police Department or the New York State Police urging law enforcement to proceed with caution when interacting with Plaintiff constituted an official "policy" sufficient to support imposition of municipal liability (Dkt. 25 at ¶¶ 17-19); and (2) that Sheriff Bower was a policymaking official for the County and his involvement in the incident at issue is thus a sufficient basis for imposition of municipal liability (Dkt. 258 at 5-6). Neither of these arguments can save Plaintiff's claims.

Plaintiff's argument regarding the "officer safety notice" fails in two ways. First, the record before the Court indicates that the "officer safety notice" was <u>not</u> issued by the County—instead, it was issued by either the Albion Police Department or the New York

State Police.  (*See* Dkt. 18-12 at 6-9.)  Plaintiff has cited no authority for the proposition that a municipality may be held liable under § 1983 because a different governmental unit has issued a policy.  *Cf. Vaher v. Town of Orangetown, N.Y.*, 133 F. Supp. 3d 574, 605-06 (S.D.N.Y. 2015) ("[A] municipality cannot be liable under *Monell* if it merely carries out a state law without any 'meaningful' or 'conscious' choice, because the municipality does not act pursuant to its own policy in that case."  (emphasis added and quoting *Vives v. City of New York*, 524 F.3d 346, 351-53 (2d Cir. 2008))).   There is no evidence in the record to support the conclusion that the County adopted or otherwise gave its imprimatur to the "officer safety notice."

Second, there is also no evidence in the record that Undersheriff Bourke was acting pursuant to the "officer safety notice" when he used force on and arrested Plaintiff.  The evidence of record indicates only that the "officer safety notice" urged the use of caution in interactions with Plaintiff; there is no indication whatsoever that it contained any policies or even recommendations regarding the use of force or an assessment of when an arrest was appropriate.  *See Plair v. City of New York*, 789 F. Supp. 2d 459, 468 (S.D.N.Y. 2011) (a plaintiff seeking to impose liability on a municipality under § 1983 bears the burden to "establish a causal connection—an 'affirmative link'—between the policy and deprivation of his constitutional rights" (quoting *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)).   Plaintiff has failed to identify any evidence establishing a causal connection between a general recommendation to exercise caution issued by a different governmental unit and Undersheriff Bourke's decision to use force on and arrest him.  Indeed, it is not even clear that Undersheriff Bourke was familiar with the "officer safety

- 12 -

notice"—the only evidence in the record before the Court regarding the existence of the "officer safety notice" is Deputy Breuilly's testimony that he recalled learning of the "officer safety notice" at a pre-shift briefing and that it was not, to his knowledge, an actual written bulletin. (Dkt. 18-12 at 6-9). There is no evidence in the record that Undersheriff Bourke was at the pre-shift briefing in question, and Undersheriff Bourke has not indicated that he was aware of the "officer safety notice," but instead has stated only that he "proceed[s] with caution when interacting with" Plaintiff based on Plaintiff's "history of combative behavior." (Dkt. 18-27 at ¶ 13). On this record, no reasonable jury could find the requisite causal connection between the "officer safety notice" and Undersheriff Bourke's actions.

As to Plaintiff's argument regarding Sheriff Bower, it is true that municipal liability may attach "where a single act is taken by a municipal employee who, as a matter of state law, has final policymaking authority in the area in which the action was taken." *Wheeler v. Wallkill*, No. 16-CV-7441 (KMK), 2017 WL 2999503, at *5 (S.D.N.Y. July 13, 2017) (citation and alteration omitted). "[T]he question of whether a given official is the municipality's final policymaking official in a given area is a matter of law to be decided by the court." *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000). Plaintiff bears the burden to "establish [this] element [of his municipal liability claim] as a matter of law." *Id.*; *see also Edrei v. City of New York*, 254 F. Supp. 3d 565, 580 (S.D.N.Y. 2017) ("It is ultimately the plaintiff's burden to establish, as a matter of law, that an official had final policymaking authority in the particular area involved[.]" (citation and alteration omitted)), *aff'd sub nom. Edrei v. Maguire*, 892 F.3d 525 (2d Cir. 2018); *Vaher*, 133 F. Supp. 3d at 594 ("In

order to hold a municipality liable for a single decision by a municipal policymaker, a plaintiff must demonstrate the decisionmaker's final policymaking authority over the specific area of government behavior that is being challenged." (citation, alterations, and internal quotation marks omitted)).

Here, Plaintiff has neither produced nor pointed to any evidence or legal authority supporting the conclusion that Sheriff Bower had final policymaking authority regarding the force to be used in effectuating an arrest or when probable cause for an arrest has been established. Instead, the only citation he makes for his contention that "Sheriff Bowers [sic] is an authorized policymaker for the County of Orleans" (Dkt. 25-8 at 5) is to *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986). However, the Supreme Court's decision in *Pembaur* was based on the fact that "the Court of Appeals concluded, based upon its examination of Ohio law, that both the County Sheriff and the County Prosecutor could establish county policy under appropriate circumstances, a conclusion that we do not question here," *id*. at 484, and thus provides no guidance whatsoever as to whether, under New York law, Sheriff Bower constituted a final policymaking official with respect to Plaintiff's claims.[2] Plaintiff's "vague assertion" of final policymaking authority by Sheriff Bower is simply insufficient to satisfy his burden. *Schwab v. Smalls*, 435 F. App'x 37, 40 (2d Cir. 2011); *see also Canner v. City of Long Beach*, No. 12-CV-2611, 2014 WL

---

[2]     The Court notes that Justice White's concurring opinion in *Pembaur* actually cuts against Plaintiff's argument, as it states that "[a] sheriff, for example, is not the final policymaker with respect to the probable-cause requirement for a valid arrest. He has no alternative but to act in accordance with the established standard; and his deliberate or mistaken departure from the controlling law of arrest would not represent municipal policy." 475 U.S. at 486 (White, J., concurring).

2862791, at *11 (E.D.N.Y. June 23, 2014) ("As plaintiffs do not reference any state law supporting their claim that [one of the defendants] was a final policymaker, the *Monell* claim does not survive.").

For all these reasons, the Court concludes that no rational jury could find that the actions Plaintiff complains of were undertaken pursuant to an official policy or custom of the County.   Defendants are accordingly entitled to summary judgment on the only claims that remain in this matter—that is, Plaintiff's § 1983 claims against the County and against Sheriff Bower and Undersheriff Bourke in their official capacities.   The Court need not and does not reach Defendants' remaining arguments in support of their motion for summary judgment.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Dkt. 18) is granted.  The Clerk of Court is instructed to enter judgment and close the case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:      May 21, 2021
            Rochester, New York